UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                                                                    Case No. 18-cr-159-pp

JANTZEN L. BOND,

        Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR BOND REVIEW
(DKT. NO. 31) BUT DECLINING TO RELEASE DEFENDANT ON BOND**

---

On July 13, 2018, Judge Joseph issued a criminal complaint and arrest warrant for defendant Jantzen Bond. Dkt. No. 1. The defendant was arrested on July 17, 2018 and made an initial appearance before Judge Duffin that same day. Dkt. No. 2. At that hearing, the defendant reserved his right to argue for bond at a later date; Judge Duffin ordered him detained pending trial. Dkt. No. 2. A week later, the grand jury returned a seven-count indictment charging the defendant with (1) possessing with intent to distribute 100 grams or more of heroin; (2) possessing a firearm in furtherance of a drug trafficking offense; (3) being a felon in possession of a firearm; (4) possessing with intent to distribute 100 grams or more of heroin and possessing with intent to distribute 500 grams or more of cocaine; (5) possessing with intent to distribute cocaine; (6) possessing a firearm in furtherance of a drug trafficking offense; and (7) being felon in possession of a firearm. Dkt. No. 9. The defendant appeared

before Judge Duffin for arraignment and plea on July 26, 2018 and Judge Duffin continued the defendant's detention status. Dkt. No. 10.

On November 8, 2018, the defendant filed a motion asking Judge Duffin to review his bond status. Dkt. No. 20. Judge Duffin held a hearing on the motion, and the defendant asked to be released on conditions. Dkt. No. 21. The minutes of the hearing reflect that Judge Duffin declined to release the defendant because the defendant's arguments failed to address the danger he posed to the community. Id. at 3. Seven and a half months later, the defendant has asked this court to review Judge Duffin's decision and to release him. Dkt. No. 31. The court grants the defendant's request to review Judge Duffin's detention order but declines to release the defendant.

This court reviews the question of whether to release the defendant *de novo*. 18 U.S.C. §3145(a); United States v. Hammond, 204 F.Supp.2d 1157, 1162 (E.D. Wis. 2002) (citations omitted). Based on the record and the defendant's submissions, the court has enough information to decide without holding a hearing. In addition to the arguments the made at the November 16, 2018 hearing, the defendant's motion for review of Judge Duffin's bond determination offered the following: (1) The defendant's mother and aunt would offer as collateral the residence at 4508 N. 29th Street in Milwaukee, which the defendant's grandmother previously owned and which the defendant represents has a value of $48,800; and (2) the defendant would be willing to submit to a condition of electronic monitoring with twenty-four-hour home

confinement. Dkt. No. 31 at 2. The defendant asserts that these two conditions are enough to secure his appearance and ensure the safety of the community.

Section 3142(g) of Title 18 of the United States Code lists the factors a court must consider in deciding whether there is any combination of conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the community." Those factors include (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. §3142(g)(1)-(4). Judge Duffin opined that the plaintiff's family support and community ties and his mother's willingness to post her home mitigated the risk of the defendant's non-appearance, but ordered the defendant detained because he found that these things did not mitigate any risk that the defendant posed a danger to others or the community. Dkt. No. 21 at 3.

The grand jury charged the defendant with seven offenses covering three incidents that occurred over a ten-month period. The indictment alleges that in September 2017, the defendant possessed more than 100 grams of heroin and three guns—a rifle, a 9mm handgun and a .380 handgun (Counts One through Three). Dkt. No. 9. The indictment alleges that in February 2018 (some five months later), the defendant possessed over 100 grams of heroin and over 500 grams of cocaine (Count Four). Id. The indictment concludes by alleging that in July of 2018 (another five months later), the defendant possessed an

unidentified amount of cocaine, a rifle and a Ruger .357 Magnum handgun (Counts Five through Seven). Id. The indictment concludes with a forfeiture notice, alleging that the government seized $15,071 and two cars. Id.

The charges in Counts One and Four carry mandatory minimum sentences of five years each and maximum sentences of forty years each. 21 U.S.C. §841(b)(1)(B)(i). Under 18 U.S.C. §§3142(f)(1) and (e)(3), these offenses alone give rise to a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. When the court considers the fact that on two of the three dates charged in the indictment, the defendant possessed handguns, the court cannot avoid the conclusion that the defendant poses a danger to the community.

Looking beyond the allegations of the indictment, the government proffered to Judge Duffin that the defendant—working alone—possessed large amounts of heroin and cocaine—a total of 604 grams of heroin and 1.6 kilograms of cocaine (as well as 1.5 kilograms of marijuana). Dkt. No. 21 at 2. The government represented to Judge Duffin that the case started with a "bust" on September 24-25, 2017, when the defendant "was found" with half a kilogram of heroin, almost half a kilogram of marijuana and nearly fifteen grams of crack, as well as almost $5,000 in cash, a semi-automatic rifle and three hand guns. Id. It appears that he was charged in state court, and the state-court judge set cash bail at $10,000; the defendant was able to post that amount "right away." Id. While the defendant was on bail for the charges

4

relating to the September 24-25 arrest, he committed the February 17, 2018 offense; law enforcement found him in his car with a kilogram and a half of cocaine and 103 grams of heroin, and the "person with him" had a gun. According to the government, the defendant admitted this. Id. This event resulted in the addition of a bail-jumping charge in the state case. Id. While the court can't be sure, the minutes from the hearing before Judge Duffin also indicate that the state court commissioner may have added another $10,000 in bail, and that the defendant may have paid it. Id. In early summer 2017, the federal authorities conducted two controlled purchases of drugs from the defendant, despite the fact that by this time he'd been caught twice. Id. An undercover agent conducted another controlled purchase July 16, 2018 at a residence—it's not clear whether it was the defendant's residence. Id. The government told Judge Duffin, however, that when he came out of that residence to conduct the drug deal, the defendant left an infant inside the house—a house which, according to the government, had narcotics "left out in the open in September bust, raid in July, drugs, firearms out in the open." Id. Someone—the minutes imply that it was law enforcement—took the infant to Children's Hospital, and the infant "tested positive for cocaine." Id.

     This history indicates that the defendant has been involved in several very serious offenses, offenses involving significant amounts of drugs coupled with guns. The weight of the evidence appears to be strong—the evidence comes from drug raids and controlled purchases, not from historical information provided by confidential sources or informants. The history

5

indicates that there is a significant risk that the defendant, if released, would continue to sell drugs in the community and to arm himself; he was caught twice during the ten months covered by the federal indictment, yet was undeterred. The defendant appears to have admitted at least some of the conduct the government described.

The defendant has argued—and Judge Duffin agreed—that he has family support in the community. His mother is willing to post her home, which he represents has some $40,000 in equity available, to ensure his appearances in court. The defendant maintains that he made all his court appearances in state court and made all his Justice Point appointments. The defendant also offers that, to mitigate the risk to the public, he would be willing to submit to a condition of home confinement and twenty-four hour-location monitoring.

Section 3142(g)(3) directs the court to consider a defendant's physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings, and whether at the time of arrest the person was on probation, parole, or release pending trial or sentencing.

The bond study prepared by pre-trial services indicates that the then-27 year old (now 28) defendant has lived in Milwaukee for all his life save for two years from the ages of eight to ten when he lived in Mississippi. Dkt. No. 8. He has a large family in the Milwaukee area with whom he shares a close relationship. He has a one-year old daughter (likely now around two) with his

girlfriend of eight years. He never has been employed; he admitted that he supported himself by selling drugs. He reported owning a vehicle worth $5,000 and having monthly expenses of $1,950. The defendant reported using alcohol occasionally and marijuana daily. The defendant's criminal history prior to the events in this case is minor—a marijuana possession charge from 2009 and an operating while suspended charge from 2016.

The court agrees with Judge Duffin that the defendant's history and characteristics do not indicate that he is a flight risk. The defendant has strong ties to the community. His family is here and he has lived in Milwaukee for almost his entire life. His mother is willing to risk her home as security for his appearances. He made all his previous court hearings in state court. Like Judge Duffin, however, this court is less concerned that the defendant will flee, and much more concerned that if released, he will continue to possess and distribute lethal drugs such as heroin, and will do so while armed. It appears that the defendant was storing drugs and guns in his home, and dealing drugs out of his home, before he was indicted in federal court. That means that a condition of home confinement would not reduce the risk of his continued holding and dealing. To the contrary, requiring him to stay at home 24/7 would simply equate to requiring the defendant to stay at his "place of business" round the clock. Nor does the fact that the defendant's mother would put up her home reduce the risk that he will continue to possess and sell drugs, and to possess guns. The defendant has demonstrated that he was willing to risk his own freedom by dealing and possessing despite twice being

7

caught. The court cannot see why he would be deterred by knowing that his mother might lose her house. The fact that the defendant—a grown man of 28—has never held legitimate employment means that if released, he'd need to do something to support himself. So far, that "something" appears to have been dealing drugs. It is not clear to the court how else the defendant would support himself if the court were to release him, especially if the court were to require him to submit to 24/7 home confinement with electronic monitoring.

The court agrees with Judge Duffin that on the record before the court, there is no condition, and no combination of conditions, that would protect the public from the risk that the defendant will possess and sell drugs and possess firearms.

It appears that the defendant has been in custody since last July—over twelve months. But the time that has elapsed has been due, in part, to the defendant's efforts to resolve the case short of trial. Judge Duffin originally scheduled the trial for October 1, 2018. Dkt. No. 10. This court adjourned the trial on September 13, 2018, dkt. no. 17, on a representation from defense counsel that the parties were negotiating a resolution short of trial, dkt. no. 16. The court has not yet set a new trial date, because the parties have continued to seek time to negotiate. The parties must file a status report or an executed plea agreement before the end of the day on July 12, 2019. If the parties want this court to set a trial date, they need only ask. The court will try to accommodate them as soon as its calendar allows.

The court **GRANTS** the defendant's motion to review detention order. Dtk. No. 31.

The court **DENIES** the defendant's request for release pending trial. Dkt. No. 31.

Dated in Milwaukee, Wisconsin this 11th day of July, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**