UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

                                                Case No. 18-cr-159-pp

   v.

JANTZEN L. BOND,

        Defendant.

---

**ORDER DENYING MOTION FOR RELEASE PENDING SENTENCING
(DKT. NO. 50)**

---

**Background**

On July 17, 2018, the defendant was temporarily detained after being arrested on a criminal complaint; the defendant reserved bond arguments for a later date. Dkt. Nos. 2, 7. The bond study prepared at the time indicated that the defendant was twenty-eight years old, lived with his girlfriend and their daughter in Milwaukee and had never held stable employment. Dkt. No. 8 at 1-2. The report reflected that the defendant was in good physical health. Id. at 3. The defendant had prior convictions for possession of marijuana with intent to distribute (99CF1128); operating with a suspended license (16TR2689); possession of heroin with intent to deliver, use of a dangerous weapon (second or subsequent), felon-in-possession, possession of marijuana with intent to deliver and maintaining a drug house (17CF4497); and possession of heroin, cocaine and marijuana with intent to deliver and bail jumping (18CF868). Id. at 4-5. In the 2017 case, the defendant received three Justice Point violations and

1

was admonished twice by the court. Id. The defendant was on supervision for the 2017 and 2018 cases when he was arrested on this offense. Probation recommended detention. Id. at 506.

The grand jury returned a seven-count indictment on July 24, 2018. Dkt. No. 9. It charged the defendant with two counts of possession of heroin with intent to distribute, one count of possession of cocaine with intent to distribute, two counts of possessing a firearm during and in relation to a drug offense and two counts of being a felon in possession of a firearm, based on events that occurred on September 25, 2017, February 17, 2018 and July 16, 2018. Id.

On November 18, 2018, the defendant asked the court to consider granting him bond. Dkt. No. 20. His mother and aunt had agreed to post their home as bond. Id. at 1. The defendant also agreed to submit to electronic monitoring and home confinement. Id. at 2. At the November 16, 2018 hearing on the motion, Judge Duffin concluded that due to the defendant's lack of lawful employment, failure to comply with release conditions in state cases and the nature of the offense, there was no condition or combination of conditions that would ensure the safety of the community, and denied the request for release. Dkt. No. 21. On Jun 28, 2019, the defendant asked this court to review Judge Duffin's detention order. Dkt. No. 31. This court reviewed Judge Duffin's order and denied the request for release without a hearing. Dkt. No. 32. The court cited the fact that the defendant faced four charges that carried mandatory minimum sentences of five years each, the defendant's possession

of handguns on two of the three dates charged in the indictment, the evidence presented by the government, the fact that the defendant committed offenses while on release for similar offenses, the fact that the defendant posted substantial cash bond in the state cases yet still committed the federal offenses and the defendant's lack of any legal employment in concluding that the defendant posed a danger to the community. Id. at 4-8.

On December 6, 2019, the parties filed an executed plea agreement, in which the defendant agreed to plead guilty to one count of possession of heroin with intent to deliver and one count of possessing a firearm in furtherance of a drug trafficking offense. Dkt. No. 41. At the end of the plea agreement is a two-page summary of the factual basis for the plea. Id. at 14-15. The agreement indicates that the drug weight for which the defendant is responsible is at least 400 but less than 700 grams of heroin, at least 500 grams but less than two kilograms of cocaine, at least 16.8 grams but less than 22.4 grams of crack and at least one kilogram but less than 2.5 kilograms of marijuana—a total of at least 1,000 kilograms but less than 3,000 kilograms of marijuana in converted drug weight. Id. at ¶17. The agreement indicates that the defendant faces a mandatory minimum sentence of five years on the drug count and a mandatory minimum sentence of five years on the gun count, which the court must impose to run consecutively to the sentence on the drug count; in other words, the defendant will serve at least ten years as a result of the plea. Id. at ¶6. The government has agreed to recommend a sentence within the applicable guideline range. Id. at ¶23.

**COVID-19 Crisis**

As of December 6, 2019, the day the parties filed the plea agreement, the COVID-19 crisis had not hit the United States. As of the writing of this order, there are 5,052 confirmed cases in Wisconsin and there have been 257 deaths. https://www.dhs.wisconsin.gov/covid-19/index.htm. There have been confirmed cases and a death in the Milwaukee County House of Corrections, confirmed cases in local jails, and confirmed cases in Bureau of Prisons facilities. Local jails are limiting bookings and releasing defendants on work release. Municipalities, counties and states across the country are working to reduce the number of individuals confined in jails and prisons by releasing people with limited time left on their sentences, or low-level offenders or people charged with non-violent offenses. See, *e.g.*, https://www.prisonpolicy.org/virus/virusresponse.html. The Bureau of Prisons has suspended most inmate movement except in certain circumstances and with a few exceptions. https://www.bop.gov/coronavirus/covid19_status.jsp.

Federal courts are being asked to review detention orders in light of the public health crisis, and the known risks to jail and prison populations given the difficulty of social distancing and the increased likelihood that people in jails and prisons will have health issues that render them more vulnerable to the virus and to becoming more ill if they become infected. As the court has noted in another case, a quick Westlaw search reveals that in two days—March 30 and 31, 2020—there were at least fifteen decisions posted from courts across the country involving requests for review of bond, delay of surrender to

serve sentences and contested detention hearings, all referencing the COVID-19 crisis. United States v. Kintea McKenzie, No. 18 Cr. 834, 2020 WL 1503669 (S.D.N.Y. March 30, 2020) (ordering temporary release under 18 U.S.C. §3145(c) of sentenced defendant on a charge of assault with a dangerous weapon; defendant had been released on bond under strict conditions such as GPS monitoring before self-surrendering to the MCC, inmates at the MCC had been diagnosed with COVID-19 and the MCC had classified inmate as "high risk" due to his asthma); United States v. Fiumara, No. 15-94, 2020 WL 1540486 (W.D. Penn. March 30, 2020) (denying motion to lift "no bond" order for defendant who was involved in thirty-month drug conspiracy while on supervision, faced a mandatory minimum sentence of ten years, did not articulate any unique susceptibility to COVID-19 and did not convince the court that she did not pose a danger to the community); United States v. Smoot, No. 19-CR-20, 2020 WL 1501810 (S.D. Ohio March 30, 2020) (declining to release pretrial detainee under 18 U.S.C. §§3145(b) and 3142(i) charged with being a felon in possession of a firearm who had extensive criminal history, did not identify an outbreak at his facility and submitted no proof that his alleged respiratory conditions were not being managed at his facility); United States v. Lee, No. 19-cr-20112-03, 2020 WL 1540207 (E.D. Mich. March 30, 2020) (denying release of pretrial detainee charged in a crack conspiracy on the ground that the COVID-19 pandemic alone is not a sufficient basis to justify release; court still must consider 18 U.S.C. §3142(g) factors); United States v. Winchester, No. 18CR301-1, 2020WL 1515683 (M.D. North Carolina March 30,

2020) (declining to release detainee charged with possession of a firearm with obliterated serial number and awaiting sentencing on revocation of supervised release who argued that being incarcerated placed him at greater risk for COVID-19 infection); United States v. Oliver, No. JKB-16-0485, 2020 WL 1505899 (D. Maryland March 30, 2020) (denying motion of defendant sentenced in a racketeering conspiracy to serve the remainder of her sentence on home confinement rather than a halfway house on the basis of the COVID-19 pandemic; defendant had not exhausted remedies and Bureau of Prisons could place her in home confinement); United States v. Williams, No. JKB-15-0646, 2020 WL 1506222 (D. Maryland March 30, 2020) (same as Oliver); United States v. Beamon, Nos. 19-570, 20-040, 2020 WL 1540511 (D. Maryland March 30, 2020) (declining to vacate detention order for pretrial detainee who had been denied release twice before and who relied solely on the COVID-19 pandemic as the basis for release); United States v. Lee, No. 19-cr-298, 2020 WL 1541049 (D.D.C. March 30, 2020) (denying motion of pretrial detainee charged with being a felon in possession of firearms on basis that COVID-19 crisis did not alter analysis under §3142); United States v. Davis, No. ELH-20-09, 2020 WL 1529158 (D. Maryland March 30, 2020) (granting pretrial release to pretrial detainee charged with possession of crack and fentanyl where defendant reported having bronchitis, was in a facility in which five inmates had tested positive for the virus, had no prior criminal convictions and no history of violence and release conditions included location monitoring); United States v. Nkanga Nkanga, No. 18-CR-713, 2020 WL 1529535 (S.D.N.Y.

March 31, 2020) (denying release to 67-year-old former doctor with no criminal record who pled guilty to unlawfully prescribing opioids for non-medical purposes, despite defendant's age, asthma and other medical conditions and the fact that the facility in which he was housed was not taking measures to prevent the spread of the virus, because he had been convicted and the law required remand); United States v. Kerr, No. 19-cr-296, 2020 WL 1529180 (N.D. Tex. March 31, 2020) (denying release to fifty-year-old defendant who pled guilty to receipt of child pornography and who argued that the risk that COVID-19 would reach his facility created exceptional circumstances justifying release); United States v. French, No. 12-cr-00160-JAW, 2020 WL 1539926 (D. Maine March 31, 2020) (granting defendants' motions for temporary bail after finding that neither defendant posed a risk of flight or danger to the community and that both were at increased risk for severe illness if infected due to age and medical conditions); United States v. Brent Brown, No. 08-cfr-20115-JAR-TJJ-01, 2020 WL 1536544 (D. Kan. March 31, 2020) (denying temporary release of defendant detained for supervised release revocation despite health issues relating to his lungs and pneumonia, concluding that under four-pronged COVID-19 analysis, factors weighed against temporary release); United States v. Sanders, No. 19-20037-01-DDC, 2020 WL 1528621 (D. Kan. March 31, 2020) (denying release to defendant charged with drug offenses, possession of firearms by a felon, §924(c) and keeping a drug house because under four-pronged COVID-19 analysis, factors weighed against temporary release).

**The Defendant's Motion and the Government's Response**

Against this backdrop, the defendant has moved under 18 U.S.C. §3143 for the court to order his release on GPS monitoring to live at his mother's residence. Dkt. No. 50. The motion indicates that the defendant is being held at the Waukesha County Jail. Id. at 1. The defendant acknowledges that he does not have a history of underlying illness or any other facts that would make him particularly vulnerable to a severe reaction to COVID-19; he explains that he seeks release because he can't practice good social distancing or the necessary hygiene in the jail. Id. His mother and aunt remain willing to post their property. Id. at 2. He also says that given the governor's Safer-at-Home order and his willingness to submit to home confinement with GPS monitoring, the danger he poses to the community should be mitigated. Id. He also notes that he is not scheduled to be sentenced until June 4, 2019. Id. In a supplement to the motion, he anticipates that that sentencing date may be adjourned (unless he agrees to be sentenced via videoconference as permitted by the CARES Act), notes that time spent in a local jail is by anyone's measure "hard time," and notes that at least one of his co-defendants was sentenced in February and remains in the local jail. Dkt. No. 54. The government opposes the defendant's request. Dkt. No. 53.

**Analysis**

The defendant seeks release under 18 U.S.C. §3143, which provides that if a person has been found guilty of an offense in a case described in 18 U.S.C. §3142(f)(1)(A), (B) or (C), the court *must* detain that person unless the court

8

finds that there is a substantial likelihood that a motion for acquittal or a new trial will be granted, or the government does not plan to recommend a sentence of imprisonment, *and* the judge finds by clear and convincing evidence that the person isn't a risk of flight or a danger to the community. The defendant has been found guilty of an offense for which the maximum term of imprisonment is ten years or more—an offense in a case described in 18 U.S.C. §3142(f)(1)(C). Thus, he must be detained unless the court finds that there is a substantial likelihood that a motion for acquittal or a new trial will be granted or the government does not plan to recommend a sentence of imprisonment, *and* this court finds by clear and convincing evidence that the defendant isn't a flight risk or a danger to the community.

The court cannot find that there is a substantial likelihood that a motion for acquittal or new trial will be granted, because the defendant has pled guilty. Nor can the court find that the government does not plan to recommend a sentence of imprisonment—the defendant faces a ten-year mandatory minimum sentence, so the government has no choice but to recommend a sentence of imprisonment.

Even if the court were able to make one of those findings, it could not find by clear and convincing evidence that the defendant is not a danger to the community. For the reasons the court articulated in its July 11, 2019 order denying the defendant's motion for review of Judge Duffin's detention order, the court finds that the defendant is a danger to the community. He never has held legitimate employment, he has supported himself with drug dealing, he

has possessed guns as part of that drug dealing, he has dealt drugs and possessed guns while on supervision for other gun- and drug-related charges and he has violated supervision in other ways.

The defendant argues that the danger he might have presented to the community several months ago is now mitigated as a result of the Safer-at-Home order issued by Governor Evers, combined with his willingness to submit to home confinement and GPS monitoring. The court cannot agree. The defendant has violated court orders by committing Justice Point violations while on state supervision. The fact that these violations could have resulted in his being revoked and incarcerated didn't deter him from continuing to commit gun and drug crimes while on release. This history supports a conclusion that the Safer-at-Home order would not deter the defendant, either. GPS monitoring would tell the probation department whether the defendant had left his home, but it wouldn't reveal what he was doing if he left.

The question at the heart of the defendant's motion is whether the risks posed to the defendant by his incarceration during the COVID-19 crisis are so high that they warrant his release despite the above. The court cannot disagree with the defendant that being in the tight and restricted confines of the Waukesha County Jail poses a COVID-19 risk to him. There was an inmate in the jail who tested positive; jail staff isolated him, and he since has made a full recovery. The jail contracted for special cleaning of the pod in which he was housed once he was released from quarantine. A correctional officer also was diagnosed with the virus and sent home to recuperate; the jail took steps to

trace that person's contacts. The fact that there have been only two confirmed cases at the jail doesn't reduce the fear factor for the defendant and his fellow inmates. It does not make it easier for them to stay at least six feet away from each other at all times. It doesn't provide them hand sanitizer or antibacterial soap or the freedom to wash their hands twenty times a day. It does not provide them with masks or gloves.

But the defendant concedes that he is not any more vulnerable to the virus, or to a severe reaction if he were to be infected, than any of his fellow inmates—he has no underlying health conditions, is not elderly, has not traveled. The Waukesha County Jail is taking precautions to prevent spread. It is medically screening inmates returning to the facility and new inmates. It has canceled public visitation—a step which likely increases inmates' stress level but reduces the number of people with whom inmates and staff have contact. It has increased cleaning protocols.

The court has no doubt that the defendant is concerned for the health and safety of his family. It is hard to imagine anyone who would not be concerned for the health and safety of family members during this crisis. That is why that concern, on its own, is not sufficient to justify the defendant's release.

The defendant expressed concern that his June 4, 2020 sentencing could be adjourned, and given all the cases that are being adjourned, could be adjourned for months. Yesterday the court modified its March 13, 2020 general order, further adjourning in-person hearings until June 1, 2020. The court

11

does not know if it will have to adjourn the defendant's June 4 sentencing hearing, but it can't say that it won't and it understands the defendant's worry that as a result, he will have to sit in Waukesha County longer than he otherwise would have. The court notes, however, that Judge Pepper (and the other district judges) are ready and willing to conduct sentencing hearings via videoconference if a defendant consents and tells the court why he does not want to delay his sentencing further. If the defendant chooses to proceed by video, the court will not need to delay his sentencing. (The court could not guarantee that the defendant would be transported to a BOP facility right away. As the defendant himself notes, the BOP is limiting inmate movement to slow the spread of the virus.)

Related to that concern is the defendant's opinion that sitting in a county jail is more difficult than sitting in a Bureau of Prisons facility. The court cannot disagree; it has heard this from many, many defendants over the years. The court will not minimize the difficulty defendants face in county jails. But the defendant will receive credit for this time against either his federal sentence or any revocation sentence in his state cases. And again, every innate in a county jail is doing "hard time" and was before the COVID-19 crisis erupted. This is not a reason for the court to release the defendant.

**Conclusion**

The court does not intend anything in this order to minimize the defendant's fear for himself and for his family. The court wishes the defendant what it wishes everyone in the country at this moment—that he stays healthy

and stays safe. But the court cannot grant the defendant's request for release pending sentencing.

The court **DENIES without prejudice** the defendant's motion for release pending sentencing. Dkt. No. 50.

Dated in Milwaukee, Wisconsin this 24th day of April, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**